O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVINE FUEL EXCHANGE, INC., KAMBIT, INC., K&R SERVICES, INC.<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC CONVENIENCE AND FUELS, LCC<br><br>Defendant. | CASE NO. SACV 11-283-JST (AGRx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING WITH PREJUDICE PLAINTIFFS' PMPA CLAIM, AND DISMISSING WITHOUT PREJUDICE PLAINTIFFS' REMAINING STATE LAW CLAIMS** |

**I. INTRODUCTION**

Before the Court is Defendant Pacific Convenience and Fuels, LLC's Motion for Judgment on the Pleadings as to the claim for violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. section 2801 *et seq.* (Doc. 8.) Plaintiffs Irvine Fuel Exchange, Inc., Kambit, Inc., and K&R Services, Inc. (collectively "Plaintiffs") have filed an opposition (Docs. 11, 14), and Defendant has replied (Docs. 12, 20). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. Accordingly, the hearing scheduled for May 2, 2011, at 10:00 a.m. is vacated. Having considered the briefs, the Court GRANTS Defendant's Motion for Judgment on the Pleadings, DISMISSES with prejudice Plaintiffs' PMPA claim, and DISMISSES without prejudice Plaintiffs' remaining state law claims.

**II. BACKGROUND**

Plaintiff alleges the following facts in the Complaint and the exhibits attached thereto and referenced therein.[1] On March 9, 2001, Tosco Corporation ("Tosco"), Defendant's predecessor-in-interest, and Procare Automotive Service Solutions, Inc. ("Procare") entered into (1) a Diversified Income Property Lease ("Lease"), and (2) a 76-Branded Fee Operating Agreement ("Operating Agreement"). (Compl., Exs. 1, 2.) The Lease identifies Tosco as the lessor and Procare as the lessee. The Operating Agreement states: "This Agreement Does Not Create a Franchise Relationship Under State or Federal Laws (See Paragraph D below)." (*Id.*, Ex. 2 at 1.) Paragraph D of the Agreement is entitled "No Franchise" and states that "Tosco and [Procare] hereby agree that this

---

[1] On a Rule 12(c) motion, a district court can consider "material which is properly submitted as part of the complaint" without converting it to a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal citations omitted); Fed. R. Civ. P. 12(d). When a court does so, it assumes the attached document's contents are true. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).").

2

Agreement is not intended to, nor does it, create, extend, or renew a franchise under any local, state or federal laws including the [PMPA]." (*Id.*, Ex. 2 at 3.)

In November 2003, Procare sold its rights and obligations under the Lease and Operating Agreement as to three gas stations to Plaintiff Irvine Fuel. These gas stations operated under the 76 and Union 76 trademarks at the following locations in Orange County, California: (1) 22391 El Toro Road, El Toro, CA 92630, (2) 24281 Pacific Park Drive, Aliso Viejo, CA 92656, and (3) 4760 Irvine Blvd., Irvine, CA 92720. (*Id.* ¶ 8.) Irvine Fuel subsequently sold its rights and obligations under the El Toro station's Lease and Operating Agreement to Plaintiff Kambit and its rights and obligations under the Aliso Viejo station's Lease and Operating Agreement to Plaintiff K&R. (*Id.*)

On June 23, 2010, Irvine Fuel asked Defendant Pacific Convenience to extend the respective Leases and Operating Agreements, thereby continuing the parties' relationship under the existing terms and obligations. (*Id.* ¶ 10.) Defendant refused to do so. (*Id.* ¶ 12.) Plaintiffs allege that "[b]y doing so, Defendant has sought to take over the stations without any compensation to Plaintiffs whatsoever." (*Id.*)

On February 16, 2011, Plaintiffs filed suit against Defendant in federal district court based on federal question jurisdiction under 28 U.S.C. section 1331, alleging a claim for breach of the PMPA and asserting pendent claims for breach of written contract, unjust enrichment, and declaratory and injunctive relief. (*Id.* ¶¶ 16-44.) On March 24, 2011, Defendant filed the instant Motion for Judgment on the Pleadings as to Plaintiffs' PMPA claim, arguing that Plaintiffs do not qualify for protection under the statute.

### III. LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); therefore, the same legal standard applies to both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a Rule 12(b)(6) motion, the Court must accept as true all allegations of material facts that are in the complaint, and must construe all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Judgment on the pleadings is therefore appropriate only "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (citation omitted).

### IV. DEFENDANT'S OBJECTIONS

Defendant has filed objections to the declarations of Mohesen Ghaneian, President of Irvine Fuel; Bita Zareh, President of K&R; and Shirin Karamooz, Manager of Kambit; submitted with Plaintiffs' opposition brief. (Docs. 21-23.) Defendant asserts the general objection that the declarations are irrelevant because the Court may not consider declarations, or any other evidence outside the pleadings, on a Rule 12(c) motion unless it converts the motion into a motion for summary judgment. Defendant also asserts specific objections based on lack of foundation, lack of personal knowledge, hearsay, the best evidence rule, and the parol evidence rule.

As to whether the Court can consider the declarations, Rule 12(d) holds that on a Rule 12(c) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). This conversion to a summary judgment motion only occurs, however, "if the district court relies on those materials." *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); *see Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (the district court must go "beyond the pleadings to resolve an issue" to convert a motion for judgment on the pleadings to a

4

motion for summary judgment). Indeed, a motion for judgment on the pleadings "is not automatically converted into a motion for summary judgment whenever matters outside the pleadings happen to be filed with the court and not expressly rejected by the court." *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 642 n.4 (9th Cir. 1989). "The proper inquiry is whether the court relied on the extraneous matter." *Id.*

To resolve Defendant's Rule 12(c) Motion, the Court relies only on the pleadings, including the exhibits attached to Plaintiffs' Complaint, and does not consider Plaintiffs' declarations. The declarations are therefore excluded, and Defendant's objections are moot.

**V. DISCUSSION**

    **A. Statutory Framework of the PMPA**

"The PMPA is intended to protect gas station franchise owners from arbitrary termination or nonrenewal of their franchises with large oil corporations and gasoline distributors, and to remedy the disparity in bargaining power between parties to gasoline franchise contracts." *BP W. Coast Prods., LLC v. May*, 447 F.3d 658, 662 (9th Cir. 2006) (quoting *DuFresne's Auto Serv., Inc. v. Shell Oil Co.*, 992 F.2d 920, 925 (9th Cir. 1993)); *see* 15 U.S.C. §§ 2802-2803. The PMPA does this by "limit[ing] the circumstances in which petroleum franchisors may terminate a franchise or fail to renew a franchise relationship." *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.*, 130 S. Ct. 1251, 1254 (2010). The PMPA defines "franchisor" as "a refiner or distributor . . . who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(3). Conversely, "franchisee" means "a retailer or distributor . . . who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(4). The PMPA defines "franchise" as any contract between (1) a refiner and distributor, (2) a refiner and a retailer, (3) a distributor and a distributor, or (4) a distributor and a retailer "under which a refiner or distributor . . .

authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use." 15 U.S.C. § 2801(1)(A)(i)-(iv).

Thus, "Congress intended the PMPA to apply only to the franchise relationships between a 'refiner,' 'distributor,' or 'retailer' of motor fuels under a brand name" and "[u]nless the parties meet the statutory definition of one of these terms, there is no coverage under the PMPA and general contractual principles govern." *Farm Stores, Inc. v. Texaco, Inc.*, 763 F.2d 1335, 1339-40 (11th Cir. 1985). Defendant argues that Plaintiffs were neither distributors nor retailers of gasoline and are therefore not protected as franchisees under the PMPA. Plaintiffs counter that they are retailers under the Operating Agreement and that a franchisor-franchisee relationship exists between them and Defendant, which gives rise to protection under the PMPA. The Court agrees with Defendant and concludes that Plaintiffs are not retailers under the PMPA and, thus, cannot bring a claim as a franchisee under the statute.

### B. Plaintiffs Do Not Qualify as Retailers Under the PMPA

Plaintiffs contend that, under the Operating Agreement, they are "retailers" because they market and sell motor fuels for Defendant and bear significant risks and responsibilities traditionally assumed by franchisees in doing so. (*See* Pls.' Opp'n at 5, 12-14, 16; Compl. ¶ 23.) However, the PMPA defines "retailer" as "any person who *purchases* motor fuel for sale to the general public for ultimate consumption." 15 U.S.C. § 2801(7) (emphasis added). Indeed, "[i]n the typical franchise agreement, the franchisor [1] leases the service-station premises to the franchisee, [2] grants the franchisee the right to use the franchisor's trademark, and [3] agrees to *sell* motor fuel to the franchisee for resale." *Mac's Shell*, 130 S. Ct. at 1255 (emphasis added). "Courts sometimes describe these three types of agreements as 'the statutory elements' of a petroleum franchise." *Id.* n.1; *see Chevron U.S.A., Inc. v. El-Khoury*, 285 F.3d 1159, 1160 (9th Cir. 2002)

(describing the "typical gasoline franchise agreement" as when the gasoline distributor (1) retains ownership over the facility but leases it to the franchisee, (2) licenses its trademarks to the franchisee, and (3) supplies the gasoline sold by the franchisee in return for "a portion of [franchisee's] sales").

Plaintiffs do not allege in the Complaint nor argue in their opposition that they purchased motor fuel for resale. Instead, Plaintiffs allege that they are "franchisees of Defendant" and "also retailers of motor fuels." (Compl. ¶ 23.) However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Twombly*, 550 U.S. at 555). Moreover, these allegations are directly contradicted and unsupported by the Operating Agreement, which is attached to, and referenced in, the Complaint. *See Dent v. Cox Commc'ns*, 502 F.3d 1141, 1143 (9th Cir. 2007) (a district court must accept as true the allegations in a plaintiff's complaint, unless contradicted by documents properly accompanying the complaint and incorporated therein).

The Operating Agreement states at the top of the first page in bold, all capital lettering: "THIS AGREEMENT DOES NOT CREATE A FRANCHISE RELATIONSHIP UNDER STATE OR FEDERAL LAWS (See Paragraph D below)." (Compl., Ex. 2 at 1.) Paragraph D, entitled "No Franchise," states that "[Defendant] and [Plaintiffs] hereby agree that this Agreement is not intended to, nor does it, create, extend, or renew a franchise under any local, state or federal laws including the [PMPA]." (*Id.* at 3.) Moreover, Plaintiffs do not meet the definition of "retailers" under the PMPA because, despite the fact that they marketed and sold gasoline under the 76 trademark, they do not and cannot, consistent with the Operating Agreement, allege that they "purchased" the motor fuel from Defendant. The terms of the Operating Agreement explicitly provide that Plaintiffs did not purchase or own the fuel sold at the gas stations: "[Defendant] shall be responsible for the costs and expenses incurred for the sale of motor fuels . . . including gasoline resale licenses and permits . . . ." (*Id.* at 6 ¶ G.) Plaintiffs merely performed "marketing services," such as (1) opening and closing the gas stations, (2) implementing

price changes for motor fuels and changing price signs accordingly as directed by Defendant, (3) collecting payments from consumers, and (4) dispensing and selling motor fuel and petroleum products to the public "as [Defendant] normally offers to the consuming public at its retail marketing stations . . . ." (*Id.* at 2 ¶ B.) In return for these marketing services, Plaintiffs did not retain any funds from the sale of the fuel, but Defendant paid them a monthly operating fee. (*Id.* at 11.)

In *Farm Stores, Inc. v. Texaco, Inc.*, the Eleventh Circuit found that an operator of a gasoline station was not a purchaser of gasoline, and thus not a retailer, when it did not (i) pay for the gasoline inventory until it was sold, (ii) take title of the gasoline, (iii) pay ad valorem taxes on the gasoline inventory, (iv) bear the risk of loss of the gasoline (except for its own carelessness), (v) retain any funds from the sale of the gasoline to motorists, (vi) set the price or assume the market risk in fluctuations in gasoline prices, (vii) pay sales taxes or extend credit to motorists on resale, or (viii) hold a gasoline retailers business license. *Farm Stores*, 763 F.2d at 1340; *see Iqbal v. B&R Oil Co.*, No. 09C1382, 2009 WL 3614978, at *4 (N.D. Ill. Oct. 27, 2009) (dismissing PMPA claim because plaintiff "merely dispense[d] motor fuel on behalf of defendant who retains title, ownership, and risk of loss of the motor fuel"). Although Plaintiffs argue that they assume the risk of "drive-offs," i.e., a customer refusing to pay for its fuel, this alone does not make Plaintiffs retailers. *See Farm Stores*, 763 F.2d at 1340 (bearing the risk of loss of the gasoline "except for its own carelessness" is insufficient to qualify as a retailer); *Karak v. Bursaw Oil Corp.*, 147 F. Supp. 2d 9, 15 (D. Mass. 2001) (holding that even though plaintiffs bore "some limited risk of loss" from "bad checks, customers who drive away without paying, accidentally spilled motor fuel and credit card chargebacks," they were not retailers under the PMPA). As a result, it is clear from the pleadings that Plaintiffs are not retailers under the PMPA and cannot bring a claim pursuant to the PMPA. Defendant is therefore entitled to judgment as a matter of law as to Plaintiffs' PMPA claim.

### C. Dismissal of Plaintiffs' Remaining Claims Without Prejudice

Plaintiffs brought this action in federal district court based on their PMPA claim pursuant to 28 U.S.C. section 1331. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over the remaining claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). When the federal claims granting jurisdiction are dismissed in an early stage of the litigation, the remaining state law claims should be dismissed as well. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); *see Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) (federal district court has discretion to keep or dismiss state law claims under section 1367(c)). Plaintiffs filed this case less than three months ago, the parties have not engaged in significant discovery, and the Court has yet to schedule a trial date. Because only state law claims remain, and pursuant to its discretion under section 1367(c), the Court dismisses the remaining claims without prejudice.

### VI. CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion for Judgment on the Pleadings and DISMISSES Plaintiffs' PMPA claim with prejudice. The Court further DISMISSES the remaining state law claims without prejudice. All remaining hearing dates and deadlines are vacated. Defendant shall prepare and submit a proposed judgment consistent with this Order.

DATED: April 28, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE